UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
JAVIER VELAZQUEZ,

                    Plaintiff,     Case No.

             -against-               **COMPLAINT & JURY DEMAND**

THE CITY OF NEW YORK, INSPECTOR
PETER VENICE, LIEUTENANT KEVIN
STAZINSKI, and LIEUTENANT DANIEL
BROWN,
                    Defendants.
------------------------------------------------------X

Plaintiff Javier Velazquez (hereinafter "Plaintiff,") as and for his complaint by his undersigned counsel, alleges as follows:

## **INTRODUCTION**

1. This is a suit to obtain relief for discrimination on the basis of Plaintiff's race and national origin, as well as retaliation arising from the discrimination which continues through his employment by the City of New York, (hereinafter "the City" through its agency, the New York City Police Department (hereinafter " the NYPD").

## **VENUE**

2. The basis of venue is Plaintiff's employment in New York County and New York County being the venue where the events alleged in the complaint occurred. Venue is proper in the United District Court for the Southern District of New York pursuant to 28 U.S.C. §§1391(b) and (c) and 42 U.S.C. 2000e-5(f)(3) in that the offices of defendants are within this district, a substantial part of the events giving rise to this claim arose in this district and records relevant to the practices complained of herein are located in this district.

## JURISDICTIONAL PREREQUISTE

3. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and a right to sue letter was received by the plaintiff on September 14, 2016.

4. This complaint is filed within 90 days of September 14, 2016.

## PARTIES

5. Plaintiff Javier Velazquez is currently employed as a Police Officer in the NYPD currently posted to the 9th precinct located at 321 East 5th Street, New York, NY 10003.

6. At all times relevant Plaintiff, as an employee of the NYPD, a department of the City, is by virtue of that fact, an "employee" of the CITY within the meaning of the relevant statutes.

7. Upon information and belief, the CITY is a domestic government agency and is engaged in business in the state of New York, with a place of business in New York County.

8. At all times relevant to this action, CITY was an "employer" for purposes of the common law of New York and the relevant statutes.

## FACTUAL ALLEGATIONS

9. From March 2014, until today, Javier Velazquez has been subjected to racial and national origin discrimination, and racial discrimination by virtue of a hostile work environment, and has been subjected to continuous and continuing acts of retaliation because of a his internal racial discrimination complaint and has been discriminated against on the basis of his race.

10. In March 2014 plaintiff was transferred to the NYPD's 9th Precinct in Manhattan. When plaintiff arrived at the premises of the NYPD's 9th precinct to commence his assignment,

he was not assigned a locker for a period of one month, although he requested a locker multiple times. The failure to assign a locker to the plaintiff was a deliberate effort to discomfit the plaintiff and show him that he was not welcome at the precinct, and was a sign of things to come.

11. On June 25, 2014, plaintiff was seriously injured in a motor vehicle accident, while off duty. Plaintiff injured his neck and was hospitalized for one month. While plaintiff was at the hospital, no officer from his command was assigned to visit him or check on his status although it was customary in the 9th precinct to assign an officer to visit any fellow officer hospitalized for that length of time. It is also customary to post signs within the precinct to inform officers whenever a fellow officer was hospitalized so that other officers who care to, may visit the hospitalized officer. This was not done in the case of the plaintiff.

12. In November 2014 when plaintiff returned from sick leave after approximately five months, plaintiff was assigned to the afternoon shift as a driver for Lieutenant Anglique Olaechea, working from 4:00 p.m. to midnight. This 4:00 p.m. to midnight shift suited the plaintiff as it enabled him to take care of his ten years old daughter in the daytime. On or about July 12, 2015, while plaintiff was on this assignment, plaintiff was approached by the Integrity Command Officer (ICO) Lieutenant Kevin Stazinski, a white male, who told the plaintiff that plaintiff was being re-assigned to the day tour as a punitive measure for being chronically sick. This punishment was unfair because plaintiff was not chronically sick, and also because Lt. Stazinski was well aware that plaintiff is a single father of a ten years old daughter, and being on the mid-night shift afforded him time to care for his daughter in the daytime whereas being on the day shift was a hardship

because plaintiff would not be able to care for his daughter in the daytime. Lt. Stazinski's treatment of plaintiff in that manner was racially motivated because white officers in plaintiff's position were not subjected to the same treatment and were routinely granted shifts favorable to them when they applied for it. On July 19, 2015, plaintiff was switched from the mid-night to the day tour as punishment.

13. On the same day, Lt. Stazinski went on to comment, in the presence of Lt. Olaechea and other officers, that plaintiff's disciplinary record with the NYPD shows that plaintiff is "a problem child". This public dressing down by Lt. Stazinski was un-necessary, uncalled for, and also un-true. It was also in violation of the Patrolman's Guide to Departmental Procedure which prohibits reprimanding a police officer in public. At this time, plaintiff had had no prior disciplinary problems with the NYPD and was not in a performance monitoring status. The verbal humiliation was also racially motivated as white officers where never subjected to such treatment.

14. On or about October 14, 2015, plaintiff complained to the NYPD's Office of Equal Employment Opportunity (OEEO) about the racially discriminatory conduct of Lt. Stazinski and other command officers regarding his punitive transfer to the day shift and also about being publicly dressed down by Lt. Stazinski. Plaintiff also complained to Lt. Olaechea, plaintiff's immediate supervisor, about the discrimination.

15. The OEEO took no action about plaintiff's complaint of racial discrimination, rather, plaintiff suffered immediate retaliation as a result. Immediately after plaintiff's complaint, within the same week, word came down from Commanding Officer (C.O.) Inspector Peter Venice (a white male) that plaintiff was absolutely prohibited from doing the 4:00 p.m. to midnight shift. Although now assigned to the day tour, plaintiff could

still do the midnight shift by mutual agreement with another officer to switch assignments. This was a customary and routine practice in the 9th precinct and the NYPD as a whole, and also this practice is allowed by the Collective Bargaining Agreement between the police officers union and the NYPD. However, Inspector Venice ordered that under no circumstances should plaintiff be allowed to switch assignments if that meant that plaintiff could work the midnight shift. Plaintiff was informed by Sergeant William Moncada (male Hispanic), Sergeant Jamie Gifkins, and Lt. Olaechea, that as per Inspector Venice, plaintiff was absolutely prohibited from working the 4:00 p.m. to midnight tour under any circumstances. Inspector Venice personally called the desk sergeant and also called Lt. Olaechea to make sure they understood that plaintiff was banned from the 4 to 12 tour. Lt. Daniel Brown, the Scheduling Officer for the precinct, also confirmed the ban.

16. On or about December 3, 2015, plaintiff requested and had a meeting with Lt. Daniel Brown, the Scheduling Officer, about the hardship caused to plaintiff by the switch to the day tour as it made it difficult for plaintiff to care for his daughter. After plaintiff explained his problem to Lt. Brown, the Lieutenant swore at the plaintiff and said "Get the fuck out of my face". Later that day, plaintiff was asked to report back to the 9th precinct where a PBA delegate told the plaintiff that plaintiff was scheduled for an internal NYPD Investigative Hearing (GO-15) because Lt. Brown alleged that plaintiff had threatened him. The GO-15 was allegedly scheduled to investigate plaintiff's misconduct in threatening Lt. Brown. This was a complete fabrication on the part of Lt. Brown. Plaintiff never threatened Lt. Brown. The allegation that plaintiff threatened Lt. Brown was false and calculated to punish the plaintiff for making an complaint of racial

discrimination to the OEEO. The GO-15 initiated by Lt. Brown's false allegation did not initially result in a command discipline against the plaintiff and a command discipline was never adjudicated for it. Plaintiff was never informed of any command discipline at the time of the incident. However, on or about April 26, 2016, plaintiff was notified to appear at One Police Plaza on or about May 3, 2016 for adjudication of a command discipline regarding the fabricated charges, and plaintiff was asked to accept a penalty of being docked 30 vacation days and placed on probation for one year. Plaintiff refused to accept this penalty since plaintiff was innocent. On June 6, 2016, plaintiff was placed on level two performance monitoring.

17. As a result of these bizarre events, plaintiff made another complaint to the NYPD's Office of Equal Employment Opportunity (OEEO) alleging that Lt. Brown's false allegations of misconduct against him was pretextual and was intended as retaliation for plaintiff's earlier internal complaint of racial discrimination. The OEEO took no action regarding this complaint.

18. On or about December 4, 2015, plaintiff received further retaliation and discrimination by being assigned to a patrol vehicle that was out of service.

19. On or about December 4, 2015, plaintiff received further retaliation by being put on a solo foot patrol in East Houston and FDR Drive, which is a well known punishment post within the command, not only because it is a dead end intersection that has no place for cover if anyone was trying to ambush the assigned police officer, but also because you the assigned officer has no partner to watch their back.

20. After these events, in further retaliation, plaintiff received a performance evaluation rating of 2.5 for the ratings period from December 2014 to December 2015. This a low or

sub-par evaluation. Such a low evaluation was unprecedented for the plaintiff. In plaintiff's previous 10 years of service with the NYPD, he had never received such a low annual rating. In the previous year, plaintiff scored a rating of 4.0. The low evaluation rating was unfair and did not reflect plaintiff's true performance. The low evaluation rating was imposed by plaintiff's superiors, the defendants, to punish him for complaining about racial discrimination. Plaintiff asked Sergeant Joseph Decandia, his immediate evaluator, why he received such a low rating and Sgt. Decandia stated, "I have nothing to do with this, it came from upstairs". Meaning that the unfair low rating annual performance evaluation score was ordered and imposed by the defendants regardless of plaintiff's actual performance.

21. Plaintiff was further punished by being told that he was prohibited from requesting a day off like other police officers in the command. The customary procedure for requesting a day off is to fill out a written request known as a Form 28, and submit it to your immediate supervisor, however, to punish the plaintiff, Inspector Venice has decreed that plaintiff cannot submit a leave request to his supervisor, rather, plaintiff must go directly to Inspector Venice in order to request a day off.

22. In further retaliation, or about February 27, 2016, plaintiff was unfairly denied line of duty designation although he suffered an injury on the job. Plaintiff suffered injuries to both shoulders on 2/27/16 after he and other officers responded to a call involving an emotionally disturbed person and in the process applied a takedown maneuver during which plaintiff and the emotionally disturbed person fell heavily to the sidewalk. Despite this fact, plaintiff's line of duty designation application was unfairly denied for an un-stated reason, although two other police officers, Heather Rodriguez and Ian Callen,

witnessed the injurious incident and formally reported it to the command.

23. In further retaliation, Lt. Brown told Police Officer Justin Conde that he is not to accept any overtime applications from the plaintiff.

24. On or about April 14, 2016, plaintiff was informed that he had belatedly been issued command disciplines charging him with five counts of misconduct relating to alleged discourtesy to superior officers Sgt. Jamie Gifkins and Lt. Daniel Brown, which misconduct was alleged to have occurred on August 28 and December 3, 2015, respectively. This command disciplines are bogus and only brought in retaliation for plaintiff's complaints about racial discrimination.

25. Since plaintiff complained about racial discrimination, the defendants, especially, Lieutenant Diaz and Lt. Brown, have subjected the plaintiff to a hostile working environment, by ordering him back to the command (a 10-2 order) multiple times while he is on patrol, for trivial, bogus and/or pre-textual reasons, with the malicious intent of preventing the plaintiff from focusing on patrol and putting plaintiff's safety at risk.

26. Since plaintiff complained about racial discrimination, the defendants, have subjected the plaintiff to a hostile working environment by unfairly placing the plaintiff in the 9th precincts minor violations log book for various trivial, bogus and/or pre-textual reasons.

27. The hostile actions of the City and its employees have left Plaintiff emotionally scarred and have caused him to suffer great emotional pain. These actions have also severely undermined Plaintiff's confidence as a police officer.

28. The discriminatory actions of the Defendants are ongoing and continue to this day.

29. The facts which give rise to the within causes of action include but are in no way limited to the facts contained above.

## AS AND FOR A FIRST CAUSE OF ACTION

30. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

31. The Defendants discriminated against Plaintiff on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e) et seq.

## AS AND FOR A SECOND CAUSE OF ACTION

32. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

33. The Defendants discriminated against Plaintiff on the basis of his race in violation of New York State Executive Law (Human Rights Law) §296.

## AS AND FOR A THIRD CAUSE OF ACTION

34. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

35. The Defendants discriminated against Plaintiff on the basis of his race, in violation of Administrative Code of the City of New York.

## AS AND FOR A FOURTH CAUSE OF ACTION

36. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

37. The Defendants retaliated against Plaintiff because he complained about the discriminatory treatment he was subjected to as a result of his race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e) et seq.

## AS AND FOR A FIFTH CAUSE OF ACTION

38. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

39. The Defendants retaliated against Plaintiff because he complained about the discriminatory treatment she was subjected to as a result of his national origin, in violation of New York State Executive Law.

## AS AND FOR A SIXTH CAUSE OF ACTION

40. Plaintiff adopts and incorporates each allegation set forth above in support of this count.

41. In light of the foregoing therefore, the Defendants retaliated against Plaintiff because he complained about the discriminatory treatment he was subjected to as a result of his national origin, in violation of the Administrative Code of the City of New York.

## AS AND FOR A SEVENTH CAUSE OF ACTION

42. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

43. The Defendants discriminated against Plaintiff on the basis of his national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e) et seq.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

44. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

45. The Defendants discriminated against Plaintiff on the basis of his national origin, in violation of New York State Executive Law (Human Rights Law) §296.

## AS AND FOR A NINTH CAUSE OF ACTION

46. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

47. The Defendants discriminated against Plaintiff on the basis of his national origin, in violation of Administrative Code of the City of New York.

## PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, Plaintiff Javier Velazquez demands judgment as follows:

a. Against the Defendants, declaring the acts and practices complained of herein are in violation of the Title VII of the Civil Rights Act of 1964, Human Rights Law of the City

of New York and the Laws of the State of New York;

b. Enjoining and permanently restraining these violations of the Human Rights Law of the City of New York and the Laws of the State of New York;

c. Directing Defendants to pay Plaintiff an additional amount as compensatory damages for his pain and suffering;

d. Directing Defendants to pay Plaintiff an additional amount as punitive damages for their willful and/or reckless disregard for Plaintiff's statutory rights;

e. Awarding Plaintiff such interest as is allowed by law;

f. Awarding Plaintiff reasonable attorney's fees and costs;

g. Trial by Jury; and

h. Granting such and further relief as this Court deems necessary and proper.

Awarding Plaintiff, Javier Velazquez, such damages as may be proved at trial, including reinstatement, back pay, front pay, compensatory damages, and punitive damages as well as costs and disbursements of this action.

Dated:   New York, New York          Respectfully submitted,
         December 13, 2016

                                     _____/s/_____
                                     Chukwuemeka Nwokoro (CN-1038)
                                     Nwokoro & Scola, Esquires
                                     Attorney for Plaintiff Javier Velazquez
                                     44 Wall Street, Suite 1218
                                     New York, NY 10005
                                     (212) 785-1060
                                     Emekanwokoro101@yahoo.com